## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jonathan Small, *et al.*, | Civ. No. 13-1509 (RHK/JJK) |
| Plaintiffs, | **ORDER** |
| v. | |
| Target Corporation, *et al.*, | |
| Defendants. | |

---

This matter is before the Court on Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement Agreement (Doc. No. 83). For the reasons that follow, the Motion will be denied.

Plaintiffs Jonathan Small and Jotmar, Inc. ("Jotmar"), a pharmacist and his pharmacy, respectively, commenced this putative class action against Target Corporation ("Target") in Minnesota state court in May 2013. The Complaint alleged that Target sent unsolicited facsimile advertisements to Jotmar and other pharmacies in violation of the Telephone Consumer Protection Act of 1991, as modified by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227. Plaintiffs further alleged that they (and members of the putative class) were entitled to statutory damages of $500 for each violation. Target timely removed the action to this Court and the parties then engaged in discovery, which revealed that 489 pharmacies likely received the same facsimile advertisement as Jotmar.

On April 23, 2014, the parties appeared before Magistrate Judge Keyes for a settlement conference, at which time they reached a tentative agreement to resolve this

matter.  Their proposed settlement provided, among other things, that the parties would stipulate to certification of a class of all persons/entities having received the Target facsimile, and Target would create a settlement fund of $183,375, from which each class member would be compensated $375 upon timely submission of a claim form (a so-called "claims-made" settlement).  The parties' agreement also provided that Target would separately pay Plaintiffs' attorneys' fees, up to $61,125.  Finally, the agreement provided that any money left in the settlement fund following the claims-submission process would revert back to Target.  In accordance with the parties' agreement, on July 30, 2014, Plaintiffs filed the instant Motion to certify a settlement class and preliminarily approve their proposed settlement.

The Court heard argument on the Motion on September 12, 2014, at which it expressed reservations about the parties' agreement.  In particular, the Court noted its concerns with the possible reversion of settlement funds to Target, especially given that the proposed settlement is a claims-made one.  The Court further noted, in its experience, that claims-made settlements typically have a low "take rate."[1]  And since the parties' agreement provides that any unclaimed funds will revert to Target, a low take rate creates the very real possibility that much, if not most, of the settlement fund will return to Target's hands.  Accordingly, the Court harbored doubts whether the settlement was adequate and should be approved.  Fed. R. Civ. P. 23(e)(2) (settlement of class action

---

[1] "'[C]laims made' settlements regularly yield response rates of 10 percent or less." Sylvester v. CIGNA Corp., 369 F. Supp. 2d 34, 52 (D. Me. 2005).

requires court approval, which may issue "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate").

In response to these concerns, Target requested the opportunity to submit a supplemental brief addressing the propriety of reversion, which the Court granted.  Target later filed a letter brief noting that several courts had approved class-action settlements with reversion clauses, and it urged the Court to do so here.  But approximately one week later, Plaintiffs filed a response to Target's letter in which they *agreed* with the concerns raised at the hearing and asked the Court *to deny their own Motion*.  (Doc. No. 92 at 5 ("Plaintiffs respectfully urge this Court to deny approval of the proposed settlement.").)

For these reasons, the Court believes there is no longer a live Motion upon which to rule.  It is Plaintiffs who requested preliminary approval of the settlement and sought certification of a settlement class, and it is Plaintiffs who no longer seek such relief.  Although Target did not oppose Plaintiffs' Motion and advocated for approval of the settlement, it did not join the Motion or file its own.  In the Court's view, therefore, the instant Motion has either been informally withdrawn by Plaintiffs or is moot; but in either case, it must be denied.

The Court pauses to note, however, that it likely would have denied the Motion in any event.  True, as Target pointed out in its letter brief, reversion clauses in settlement agreements are not *per se* objectionable, and courts have approved settlements containing them.  Nevertheless, courts are justifiably "skeptical of reversion clauses," Moore v. PetSmart, Inc., No. 5:12-CV-03577, 2014 WL 1927309, at *4 (N.D. Cal. May 14, 2014),

because they leave it difficult to ascertain precisely what the defendant will pay in exchange for resolving the class's claims.  As one court has put it:

> [S]ettlement agreements containing reversionary clauses often raise concerns about whether the settlement is in the best interests of the class. In particular, without knowing the claim rate, it is not possible to calculate the actual value of the settlement, and therefore it is difficult to assess the proportionality between the settlement's value and Plaintiffs' expected recovery at trial, which is the single most important factor in determining whether the settlement is substantively fair and adequate.

Minor v. FedEx Office & Print Servs., Inc., No. C09-1375, 2013 WL 503268, at *4 (N.D. Cal. Feb. 8, 2013); accord, e.g., Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 785 (7th Cir. 2004) (labeling a reversion provision a "questionable feature" of a settlement agreement); Sylvester v. CIGNA Corp., 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("[R]everter clauses are generally suspect and need to be viewed cautiously since they undercut the deterrent effect of class actions.") (internal quotation marks and alterations omitted); Zawikowski v. Beneficial Nat'l Bank, No. 98 C 2178, 2001 WL 290402, at *2 (N.D. Ill. Mar. 22, 2001) ("[R]eversion provisions need careful scrutiny.").

These concerns are particularly acute where, as here, a reversion clause is part of a claims-made settlement, because together "they can be used as a collusive vehicle resulting in significant fees for class counsel, a low payout by defendants, and limited benefits to the class."  Stewart v. USA Tank Sales & Erection Co., No. 12-05136-CV-SW, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014); see also Ferrington v. McAfee, Inc., No. 10-CV-1455, 2012 WL 1156399, at *12 (N.D. Cal. Apr. 6, 2012) (denying approval where settlement was "a claims-made settlement with no minimum distribution. In other words, only claims are paid, and any remainder will revert to Defendants.  A

reversion provision, like the one contained in the agreement here, is yet another indication that the proposed agreement does not meet the standards set forth in Rule 23(e).").  Indeed, the parties' agreement contemplates notifying potential class members about the settlement *via facsimile*.  Putting aside the obvious irony in providing notice by fax to claimants under the Junk Fax Prevention Act, the Court believes that affording notice in this fashion runs the risk of very few class members actually submitting claims. See Childs v. United Life Ins. Co., No. 10-CV-23, 2012 WL 1857163, at *4 (N.D. Okla. May 21, 2012) (reversion clause combined with claims process "creates a financial *disincentive* on the Defendants' part to seek out Class Members and pay claims").

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement Agreement (Doc. No. 83) is **DENIED**. Before the parties expend further time and resources litigating this case, however, the Court believes they should be afforded another opportunity to resolve this matter with the assistance of the Magistrate Judge, bearing in mind the concerns set forth above. Accordingly, it is further **ORDERED** that this matter is **REFERRED** to Magistrate Judge Keyes to conduct a settlement conference, on such terms and at such time as he shall direct.

Dated:  October 8, 2014                                  s/Richard H. Kyle
                                                         RICHARD H. KYLE
                                                         United States District Judge